UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | Case No.: 6:17-MJ-01240-TBS-1 |
| | : | |
| CHARLES ZACHARY HOWARD | : | |

**DEFENDANT CHARLES ZACHARY HOWARD'S MOTION FOR PRETRIAL RELEASE**

COMES NOW, undersigned counsel, on behalf of the Defendant, CHARLES ZACHARY HOWARD, pursuant to Title 18 United States Code Section 3142(a), and files this his motion and memorandum of law for pretrial release and in support states as follows:

I. Procedural History

1. The criminal complaint alleges that on March 8, 2017 the Defendant transmitted in interstate commerce a threat to injure the person of another; specifically, the Defendant left a threatening voicemail on *Congressman A's* Congressional voicemail, in violation of 18 United States Code Section 875(c).

    a. The threat read in part, *"Cause we're going to hunt your ass down, wrap a rope around your neck, and hang you from a lamppost."*

    b. The above quote is paraphrased from a quote incorrectly attributed to the 41st President of the United States, George H. W. Bush, in which he is falsely accused of saying, *"If the American people knew what we have done, they would string us up from the lamp posts."* Unfortunately, this quote is widely available on various Internet conspiracy theory websites.

2. The Defendant voluntarily subjected himself to arrest by federal authorities without incident in front of his home on Friday, March 17, 2017.

   a. The Defendant has been in continuous federal custody at the Seminole County Jail in Sanford, Florida since his arrest.

3. On Monday, March 20, 2017 the Defendant made his first appearance in the Middle District of Florida, Orlando Division, before the Honorable David A Baker, United States Magistrate Judge.

4. The government was not prepared for either a detention hearing or a preliminary hearing and requested a twenty-four hour continuance.

5. The Defendant's detention hearing and preliminary hearing are now scheduled for Tuesday, March 21, 2017 at 11:00 am.

II. Federal Statutory Penalty and Federal Sentencing Guideline Analysis

Pursuant to 18 United States Code Section 875(c), the Defendant's minimum and maximum term of imprisonment is zero to five years.

Pursuant to United States Sentencing Guideline Section 2A6.1(a)(1), the Defendant's base offense level is 12.

Pursuant to United States Sentencing Guideline Section 3A1.2, the Defendant's base offense level will be increased by three levels because his victim is an official victim. This results in an increase in the Defendant's base offense level to 15.

Pursuant to United States Sentencing Guideline Section 2A6.1(b)(4), the Defendant's base offense level *may* be increased by four levels if the government is able to show the offense caused a substantial expenditure of government funds. Given the facts of this case, drawn from the criminal complaint and *Jencks* material provided by the

government in advance of the detention hearing, it is unlikely this enhancement will apply.

Pursuant to United States Sentencing Guideline Section 2A6.1(b)(5), the Defendant's offense level will be decreased by four levels if the offense was a single instance involving little or no deliberation. The criminal complaint alleges the Defendant made several calls to various United States Congressmen but there is no evidence any of the alleged additional calls were threatening and none were officially charged as such. Given the evidence, or rather lack thereof, of any additional threatening calls, it is likely the Defendant will receive a four level decrease from his base offense level to 11.

Pursuant to United States Sentencing Guideline Section 3E1.1, the Defendant will receive a two level decrease from his base offense level for accepting responsibility for his actions. This results in an offense level of 9.

With a criminal history category of I and a final offense level of 9, the Defendant's advisory federal sentencing guideline imprisonment range is 4 to 10 months.

The Defendant is therefore in Zone B.

If detained, *even in the light most favorable to the government*, the Defendant would more than likely receive a credit for time served sentence by the time of his sentencing.

If not detained, given the mitigating circumstances associated with the Defendant's mental health and the somewhat haphazard and isolated nature of this offense, it is highly likely a non-incarceratory sentence will be available to the Defendant given he will be placed in Zone B, which allows for home confinement in lieu of imprisonment.

As this Honorable Court is aware the federal sentencing guidelines are simply advisory and the factors set forth under Title 18 United States Code Section 3553(a) must be given equal weight. It is therefore important to note the above advisory federal sentencing ranges do *not* account for a downward variance resulting from a Title 18 United States Code Section 3553(a) analysis. It is likely the evidence in this case will prove the Defendant acted as he did as a result of mental health issues than a desire to kill an elected official. It is therefore unrealistic to assume at this point the Defendant will automatically receive a federal prison sentence instead of non-incarceration.

III.    The Defendant's Background

The Defendant is 40 years old. He was medically discharged from the United States Navy. He is a college graduate. He has a history of employment in sales and investment banking. The Defendant has minor contact with law enforcement, most significantly a misdemeanor drug possession offense in Baltimore, Maryland in 2005 for which he received a six-month probationary sentence that he completed without issue. The Defendant has never missed a court appearance or violated probation. The Defendant does not have a passport and has traveled out of the country one time on a family vacation to Mexico. The Defendant does not own or possess a firearm.[1]

It is clear to the undersigned from the available evidence, discussions with family members and his private discussions with the Defendant that the Defendant suffers from a mental health disorder and likely has suffered from this mental health disorder his entire life. For the past few years, the Defendant has been a constant purveyor of cable and Internet news. From these viewing and reading habits, the Defendant has developed

---

[1] The Defendant's wife owns a rifle however she is willing to remove this rifle from the martial home.

4

unhealthy governmental conspiracy theories. The Defendant does not trust the United States government. This distrust has grown worse over the past twenty-four months, resulting in his ill-fated voicemail to *Congressman A* on March 8, 2017 and his first appearance before this Honorable Court on March 20, 2017.[2]

The Defendant's father is Bill Howard. Mr. Howard is a retired Colonel in the United States Army who later retired from a post-military career at Raytheon, a company associated with military defense manufacturing. Mr. Howard lives in Minnesota but he will be present at the Defendant's March 21, 2017 detention hearing.

The Defendant's mother committed suicide in approximately 2003. Prior to taking her own life, she suffered from a severe mental health illness. It is medically accepted within the mental health community that mental disorders may be passed down to offspring just like a physical illness such as heart disease. This should be noted in mitigation of the Defendant's conduct.

The Defendant has been married to Sumi Chedekel for thirteen years and in a committed relationship with her for seventeen years. Ms. Chedekel is gainfully employed

---

[2] Ironically, on the day of the Defendant's first appearance, both the Director of the Federal Bureau of Intelligence and the Director of the National Security Agency rebuked the President of the United States for setting forth a surveillance conspiracy theory about his predecessor without evidence. The reason this seemingly unrelated and coincidental national political event is important to the Defendant's criminal case is to point out the disintegration of decorum by the highest of our elected officials in the way facts and non-facts are communicated to the general public, possibly to solely advance their own political and/or personal agendas. The undersigned concedes it is not fair (*and the undersigned is not offering this footnote to exonerate the Defendant in any way*) to compare and contrast such an elected political official to the actions of the Defendant, given his threat was in the light most favorable to the government criminal in nature. However, our nation's current political climate provides official cover and acceptance to conspiracy theories, and those who practice them. This is an especially troubling trend given the negative effect they can have on individuals with mental health issues that do not allow them to consider rationally the evidence or lack thereof behind the theory. Conspiracy theories therefore end up being nothing more than a non-existent problem in search of a real solution. For a person with a mental health issue this becomes a real debilitating problem. The Defendant is exhibit A.

with *Michael Kors* company in an executive position. Ms. Chedekel lives with the Defendant in a temporary rental residence in Winter Park, Florida. They have not yet purchased a home because Ms. Chedekel's employment was recently transferred to Winter Park, Florida and she does not know if this is a permanent stay or if she will be transferred again. Since relocating to Florida, Ms. Chedekel has been the primary source of income for herself and the Defendant. The Defendant, in the reverse of traditional *(antiquated?)* marital gender roles, performs household duties and takes care of the couple's two dogs.

IV. The Bail Reform Act of 1984

    The Bail Reform Act of 1984 is chapter I of the Comprehensive Crime Control Act (CCCA) of 1984. The provisions of the Bail Reform Act of 1984 were transplanted from an earlier Senate Bill, S. 1762. The legislative history of the Bail Reform Act of 1984 is the report prepared in connection with S. 1762 (S. Rep. No. 225, 98th Congress, 1st Session (1983)). The Bail Reform Act of 1984 repealed the most recent major revision to federal bail law, the Bail Reform Act of 1966 (18 U.S.C. Sections 3141-51 – Repealed). The goal of the changes in the law regarding bail were aimed at those individuals who committed new crimes while on release and the danger those individuals pose to others if released.

    18 U.S.C. Section 3142 governs the release or detention of a defendant pending trial. Rule 5 of the Federal Rules of Criminal Procedure governs the first court appearance for a defendant charged with a federal offense. This is commonly referred to as a federal defendant's first appearance. The most important aspect of this hearing is to address the issue of release or detention. It should be noted that orders of release shall only be entered in a case that is pending trial. 18 U.S.C. Section 3142(a). Any judicial

officer authorized to order an arrest under 18 U.S.C Section 3041 may conduct a detention hearing although typically it is handled by a United States Magistrate Judge.

At the initial appearance, there are five dispositions the court can make as to release or detention:

1. Order temporary detention. If the case is one that qualifies for temporary detention under the statute, the court must so order. 18 U.S.C. Section 3142(d).

2. Conduct a detention hearing. 18 U.S.C. Section 3142(e).

3. Continue the case three to five days upon a motion for a detention hearing, while the defendant remains in custody. 18 U.S.C. Section 3142(f).

4. Order the defendant's release on his personal recognizance bond or an unsecured appearance bond. 18 U.S.C. Section 3142(b).

5. Set other conditions of release. 18 U.S.C. Section 3142(c).

V. Pretrial Release Factors to Be Considered

Pursuant to 18 U.S.C. Section 3142(g) there are four factors that should be considered when determining whether there are conditions of release that will reasonably assure the appearance of a person as required and the safety of any other person and the community. These four factors are:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; and

2. The weight of the evidence against the person; and

3. The history and characteristics of the person, including –

    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state or local law; and

4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

VI. Conditions of Release

Unless the court orders a person detained under 18 U.S.C. Section 3142(e) and (f), it must set conditions of release that a defendant can meet. 18 U.S.C. Section 3142(b) and (c). The court's objective is to always set conditions of release that will "reasonably assure the appearance of the person as required" and the "safety of any other person and the community". 18 U.S.C. Section 3142(b) and (c). Once pretrial release is determined appropriate there is a presumption in favor of release of a defendant under the least restrictive possible conditions. 18 U.S.C. Section 3142(b). There are three types of conditions of release:

1. Personal recognizance. A personal recognizance release means a defendant promises to appear to all court appearances and to not commit crimes while on release. 18 U.S.C. Section 3142(b).

2. Unsecured appearance bond. This adds one element to the personal recognizance release, in that, if a defendant does not appear as directed the court may enter a judgment against him in the amount set in the bond however a defendant need not initially post that amount or any portion of it before he is granted release. 18 U.S.C. Section 3142 (b).

3. If a release on personal recognizance or unsecured appearance bond will not reasonably assure appearance and safety then the court must turn to the catalog of conditions as set forth in 18 U.S.C. Section 3142 (c)(1). These conditions vary from simply maintaining employment to weekly drug testing to no contact with victims or witnesses to supervision by a third party custodian to an agreement to forfeit property or a surety (monetary) amount to house arrest with a monitor among other special conditions.

It should be noted that a judicial officer shall not impose a financial condition that results in the pretrial detention of a person. 18 U.S.C. Section 3142(c)(2). The pretrial detention provisions of 18 U.S.C. Section 3142 replaced the existing practice of detaining defendants through the imposition of an excessively high money bond. S. Rep. No. 225, *supra* note 9, at 16.

VII. Importance of Pretrial Release

Pretrial release is important to a defendant for the following reasons:

1. it permits a defendant - who is innocent until proven guilty - to remain at liberty while awaiting trial; and

2. it allows a defendant to maintain family and employment ties and the emotional strength to withstand the rigors of being an accused in the criminal justice system; and

3. it provides undersigned counsel with unrestricted access to a defendant while preparing his defense without the burden of jail visits that are both intrusive and cumbersome in terms of interaction and travel time; and

4. it allows a defendant to enter and leave the courtroom during trial without being observed by the jury wearing shackles and being escorted by the deputy marshals assigned to his guard; and

5. it enhances the potential for release pending appeal in the event of a conviction at trial or by plea by establishing a record of court appearances; and

6. it increases the chances that a defendant will be permitted to self-report to an institution in the event of a conviction and sentence of imprisonment; and

7. the Defendant is suffering from medical conditions, most specifically mental health illness, that is better off treated with private insurance rather than county taxpayer expense in a private setting rather than a county jail.

VIII. Legal Analysis

There are conditions, or a combination of conditions, of release that can be set in this case that will reasonably assure the safety of other persons and the community. 18 U.S.C. Section 3142(a)(2), (c). Under a pretrial detention analysis, arguendo, the Defendant's request for pretrial release will largely fall on whether he is determined to be a risk of flight or a danger to the community. However, in the interest of caution, the Defendant sets forth argument under all of the factors set forth under 18 U.S.C. Section 3142(g).

1. Under the most liberal definition of "violent", the offense charged is a violent offense against the person or property of another but it is not an offense related to the sexual exploitation, transportation or abuse of a child.

2. The weight of the evidence is still developing from a defense perspective, although it is somewhat predictable that the government will argue the weight of the evidence is strong. However, there is case law, albeit from the Ninth Circuit, that has held that this is the least important factor in determining pretrial release and the Defendant urges this Honorable Court to hold the same. *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).

3. The history and characteristics of the Defendant trend positive.

   a. The Defendant is not a flight risk. The Defendant has no history of failing to appear at court appearances, is a citizen, lives with his wife of 13 years in Winter Park, Florida, has strong family ties in the United States of America, and does not have a passport.

   b. The Defendant has no other sentence pending and this arrest has not violated any other term of probation, supervised release or parole.

   c. The Defendant is not a danger to a person or the community. The nature of the offense appears violent on the surface, and a reasonable person of course appreciates the specific threat the victim in this case all but certainly felt upon being made aware of it, but a closer look reveals this outburst is more likely the result of a mental health disorder than a true desire to harm.

IX. Requested Conditions of Release

The Defendant respectfully leaves it to this Honorable Court to determine the conditions of release but urges this Honorable Court to grant release and fashion the least restrictive means of release as set forth by law. The Defendant further reserves the right to make humble and respectful suggestions during court proceedings in this matter.

X.       Collateral

The Defendant's father will offer collateral if required by the court. Proof this collateral will be provided to the district court and the government on the day of the hearing.

XI.      Position of the Government

In accordance with local rules, undersigned counsel ascertained the position of the government as to this motion. The government objects to pretrial release.

## **CONCLUSION**

WHEREFORE, the Defendant, CHARLES ZACHARY HOWARD, by and through the undersigned counsel respectfully requests this Honorable Court grant the stated relief and/or any other relief this Honorable Court deems appropriate.

Respectfully submitted,

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210
511 West Bay Street
Third Floor - Suite 330
Tampa, Florida 33606
Direct:	(813) 228-6989
Email: mjo@markjobrien.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on March 21, 2017 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

By: /s/ Mark J. O'Brien